**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 01:44 PM December 31, 2012**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| MARTIN L. MYERS, ) | CASE NO. 11-61426 |
| ) | |
| Debtor. ) | ADV. NO. 11-6092 |
| ) | |
| ──────────────────── ) | JUDGE RUSS KENDIG |
| MD ACQUISITION, LLC, ) | |
| ) | **MEMORANDUM OF OPINION (NOT** |
| Plaintiff, ) | **INTENDED FOR PUBLICATION)** |
| v. ) | |
| ) | |
| MARTIN L. MYERS, ) | |
| ) | |
| Defendant. ) | |

Now before the court is Martin L. Myers' ("Defendant" or "Myers") motion for summary judgment, filed on June 15, 2012, and Defendant's motion to strike, filed on August 2, 2012.

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on April 4, 2012. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

1

# FACTS

Defendant owned 100% of the common stock of Martin Designs, Inc. ("Martin Designs") which was in the business of producing a variety of products, including stationery, and then selling these products to retailers. MD Acquisition, LLC ("Plaintiff" or "MDA") was formed on October 8, 2003 to purchase approximately 75% of Martin Designs' shares of common stock and all of its preferred stock. Plaintiff paid Defendant over $9,500,000.00 and other consideration for the stock. Myers retained 25% of the Martin Designs common stock. The sale was completed through three documents: a Stock Purchase Agreement,[1] an Executive Employment Agreement,[2] and a Stockholders' Agreement.

On September 26, 2005, MDA, along with Martin Designs, filed a lawsuit in Franklin County, Ohio against Myers for breaches of the Stock Purchase Agreement, Executive Employment Agreement, and Stockholders' Agreement, misappropriation of trade secrets and confidential information, and rescission of the Stock Purchase Agreement ("state court case"). During the pendency of the state court case, Martin Designs filed bankruptcy on February 21, 2008 and this Court remanded the state court case to the Franklin County Court of Common Pleas on August 28, 2009. At the trial of the state court case, MDA prosecuted two breach of contract claims against Myers for the Stock Purchase Agreement and the Executive Employment Agreement.[3]

At the conclusion of the trial, the jury entered a verdict in favor of MDA for $4,245,106.00 for Myers' breach of the Stock Purchase Agreement and $1,000,000.00 for Myers' breach of the Executive Employment Agreement. In addition, the Franklin County Court of Common Pleas entered a judgment granting prejudgment interest to MDA in the amount of $3,453,640.60. Thus, MDA won a judgment in the total amount of $8,698,746.60 against Myers.

On April 29, 2011, Myers filed a petition for relief under chapter 7 of the Bankruptcy Code. On December 15, 2011, MDA filed a complaint seeking a determination that the entire judgment above is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (4), and (6). Specifically, MDA asserts that Myers should be denied discharge of $7,072,347.60[4] pursuant to §523(a)(2)(A) for the judgment as a result of the breach of the Stock Purchase Agreement.[5] MDA argues that Myers intended to deceive MDA by making misrepresentations in the Stock Purchase Agreement about Martin Designs' customer relationships and its inventory.

---

[1] The Stock Purchase Agreement effectuated the transfer of the stock from Myers to MDA.
[2] The Executive Employment Agreement required Myers to devote his business time, attention, skill, and energy to the business of Martin Designs and use his best efforts to promote the success of Martin Designs.
[3] As stated in MDA's complaint. Also as stated in MDA's complaint, Martin Designs prosecuted three claims against Myers: breach of contract for both the Executive Employment Agreement and Stockholders' Agreement and misappropriation of trade secrets and confidential information.
[4] Judgment of $4,245,106.00 plus prejudgment interest of $2,827,240.60.
[5] MDA argued at the hearing, and in its response to the motion for summary judgment, that it also holds a § 523(a)(2)(A) claim with respect to the breach of the Executive Employment Agreement, but Count I of the complaint references only the Stock Purchase Agreement.

MDA asserts that Myers should be denied discharge of $1,626,400.00[6] pursuant to §523(a)(4) for the judgment as a result of the breach of the Executive Employment Agreement. MDA argues that the conduct that gave rise to the breach of the Executive Employment Agreement also amounts to fraud or defalcation while acting in a fiduciary capacity or embezzlement. Finally, MDA asserts that Myers should be denied discharge pursuant to § 523(a)(6) as to the total judgment against him from the state court case. MDA argues that Myers' breaches of the Stock Purchase Agreement and Executive Employment Agreement amount to a willful and malicious injury to MDA.

Myers filed a motion for summary judgment on June 15, 2012 arguing that issue preclusion applies to the judgment rendered in the state court case. On July 27, 2012, MDA filed a response in opposition to Myers' motion for summary judgment. Myers then filed, on August 2, 2012, a motion to strike certain documents attached as exhibits to MDA's response[7] and the arguments related to those documents. Myers also filed on the same day a reply to MDA's response to the motion for summary judgment, incorporating the motion to strike into his motion for summary judgment. MDA then filed, on August 16, 2012, a response in opposition to Myers' motion to strike. Myers filed a reply to MDA's response to the motion to strike on August 22, 2012. On October 15, 2012, a hearing was held on both the motion for summary judgment and motion to strike.

## LAW AND ANALYSIS

*I.     Summary Judgment Standard*

Federal Rule of Civil Procedure 56(a), applicable to this proceeding by way of Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not appropriate if a material dispute of the facts arises such that a "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

*II.    Collateral Estoppel*

Defendant argues that collateral estoppel, also known as issue preclusion, applies and bars the relitigation of the issues decided in the state court case. The doctrine of collateral estoppel accords finality to issues actually and necessarily decided in a prior suit. *See* Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979). Collateral estoppel may be invoked in nondischargeability proceedings. Grogan v. Garner, 498 U.S. 279, 284-85 (1991). The full faith and credit principles of 28 U.S.C. § 1738 require this Court to accord preclusive effect to a state court judgment if it would be preclusive under the law of the state in which the judgment was rendered.

---

[6] Judgment of $1,000,000.00 plus prejudgment interest of $626,400.00.
[7] Myers' motion to strike lists attachments 1 through 7 and trial exhibits EEO through ZZQ.

Parties dispute what law should be applied to determine if collateral estoppel applies to the state court judgment; Myers argues that New York state law applies and MDA appears to argue that Federal law applies. In the Sixth Circuit, "state law dictates whether a state court judgment should be afforded issue-preclusive effect." King's Welding & Fabricating, Inc. v. King (In re King), Case No. 10-63468, Adv. No. 10-6099, 2011 Bankr. LEXIS 2755, *9 (Bankr. N.D. Ohio July 14, 2011) (citing Ed Schory & Sons, Inc. v. Francis (In re Francis), 226 B.R. 385, 388 (B.A.P. 6th Cir. 1998)); *accord* Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 461 (6th Cir. 1999); Sill v. Sweeney (In re Sweeney), 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002); Simmons Capital Advisors, Ltd. v. Bachinski (In re Bachinski), 393 B.R. 522, 535 (Bankr. S.D. Ohio 2008). The state court case was resolved under the laws of the State of New York and, thus, New York law on collateral estoppel must be applied.

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." Evans v. Ottimo, 469 F.3d 278, 281 (2d Cir. 2006) (citing Kaufman v. Eli Lilly & Co., 65 N.Y. 2d 449, 455-56 (1985) (other citations omitted)).

In the instant matter, there is no dispute that MDA, as a party, had a full and fair opportunity to litigate the issues in the state court case. The question that arises is whether the issues raised in MDA's complaint were decided in the state court case and are decisive of the instant matter. The Court will explore each issue in detail below.

III. *Section 523(a)(2)(A)*

Under 11 U.S.C. § 523(a)(2)(A), a debt is nondischargeable if credit or an extension or renewal of credit was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

Rembert v. AT&T Universal Card Servs. (In re Rembert), 141 F.3d 277, 280-81 (6th Cir. 1998) (footnote omitted). The creditor must prove all elements by a preponderance of the evidence in order to except a debt from discharge. Id. at 281 (citing Grogan, 498 U.S. at 291). Exceptions to discharge are construed strictly against the creditor. Rembert, 141 F.3d at 281 (citing Mfr's Hanover Trust v. Ward (In re Ward), 857 F.2d 1082, 1083 (6th Cir. 1988)).

MDA asserts that the judgment against Myers in the amount of $4,245,106.00 plus prejudgment interest of $2,827,240.60 for his breach of the Stock Purchase Agreement constitutes fraud pursuant to § 523(a)(2)(A). Specifically, MDA argues that Myers made express

misrepresentations to it which created a false impression of the business of Martin Designs and induced MDA to enter into the Stock Purchase Agreement.

MDA also argues that it believes it holds a § 523(a)(2)(A) claim for Myers' breach of the Executive Employment Agreement. Contrary to MDA's arguments, the complaint does not raise a § 523(a)(2)(A) claim with respect to the breach of the Executive Employment Agreement. The Court will not address in this memorandum of opinion any arguments regarding a § 523(a)(2)(A) claim as a result of the breach of the Executive Employment Agreement. However, in the interests of justice and having found no substantial prejudice to Myers, the Court will grant leave to MDA to replead its complaint as to its § 523(a)(2)(A) claim for breach of the Executive Employment Agreement.

A. Intent

Myers argues that MDA should be collaterally estopped from bringing its § 523(a)(2)(A) claim because the jury found that Myers' breach of the Stock Purchase Agreement did not constitute an act of "intentional" or "willful fraud" and, thus, MDA already litigated the issue of intent. MDA argues that the jury question pertaining to Myers' intent was not necessary to the outcome because the jury's verdict for MDA awarded principal damages less than the damages cap of $4,500,000.00, discussed below, and as such Myers' intent was not an element of MDA's claim in the state court action. In addition, MDA argues that the "intentional" or "willful fraud" issue decided by the jury is not the same issue as "intent to deceive" and, thus, the issue of intent for purposes of § 523(a)(2)(A) was not actually litigated.

By way of background, the purpose behind the jury question pertaining to Myers' intent relates to the damages cap in the Stock Purchase Agreement. The Stock Purchase Agreement contained a damages cap of $4,500,000.00 that could not be exceeded unless a claim or action arose for intentional or willful fraud. The jury was asked to determine whether or not there was "intentional" or "willful fraud" because if the jury awarded damages to MDA in excess of $4,500,000.00, the applicability of the damages cap would be decided.

At first blush, Myers' argument for issue preclusion on the intent element is compelling. Applying the jury verdict literally, the issue of intent appears to be already litigated. Upon further review, however, the Court is not convinced. The state court case was not one for fraud, but for breach of contract. The elements required for a breach of contract, as provided in jury instruction #19, do not include an intent element. The jury only considered the issue of intent as it related to the damages cap, not as to fraud. Therefore, the Court believes that the actual issue of "intent to deceive" for purposes of § 523(a)(2)(A) was not actually litigated in the state court case.

Further, the jury may have realized the limited purpose for the question about "intentional" or "willful fraud," i.e. applicability of damages cap, and answered in the negative knowing the answer to that question was moot. The question regarding intent is the last question on jury verdict form #1 after the jurors already found damages below the damages cap and, thus, it is possible that the jurors realized this question was moot. Myers argues that the jury verdict form

5

does not instruct the jurors to skip this question as it does for other questions that are deemed moot by previous answers. Because the form does not instruct jurors to skip this question for mootness, the juror's answer to it cannot be determined irrelevant. The Court rejects this argument. The instructions that relate to the jury skipping questions reference whether the jurors answered specific questions positively or negatively to previous questions. To skip the intent question would require that the jurors total the damages awarded previously on the verdict form and make a determination if it is above or below the damages cap. To do this may have led to confusion and a possible error in answering or not answering the intent question. The Court is inclined to conclude that the jurors were instructed to answer the intent question regardless of the damages awarded, not because they were making a definitive conclusion of Myers' intent, but to avoid confusion. The Court cannot conclude that the issue of intent was thoroughly reviewed by the members of the jury given the claims of the state court case, the damages cap, and the jury verdict form. Further, it is not legally relevant whether the jury *factually* considered this issue because *legally* they did not. The law requires that the finding be necessary to the outcome. Spilman v. Harley, 656 F.2d 224 (6th Cir. 1981). Given the amount of damages awarded, this finding was unnecessary to the outcome and mere surplusage.[8]

B. Justifiable Reliance

Myers argues that MDA unsuccessfully litigated the issue of justifiable reliance because the jury found on question 2a of verdict form no. 1 that MDA would have still entered into the Stock Purchase Agreement had it known that Myers' representations and warranties in the Stock Purchase Agreement were false. MDA argues that the jury actually decided the reliance issue in its favor. Specifically, jury instruction #19, which listed the elements required for MDA to prevail on its claim for breach of the Stock Purchase Agreement, listed one of the elements as MDA relied on the representations and warranties made by Myers. Since the jury found that Myers breached the Stock Purchase Agreement, MDA argues that the jury necessarily found that MDA relied on Myers' representations and warranties.

The Court rejects Myers' argument that the issue of reliance was litigated through question 2a of verdict form no. 1. Question 2a is not dispositive on the issue of reliance. It is conceivable that MDA would have still entered the Stock Purchase Agreement knowing that Myers made false representations and warranties, but on different terms than actually made, e.g. price.

As to MDA's argument on the issue of reliance, the Court finds that jury instruction no. 19 is dispositive on the issue of reliance as to the Stock Purchase Agreement. Myers argues that the reliance issue to which MDA refers, the "representations and warranties" that the jury found MDA relied upon, is nothing more than the contract terms of the Stock Purchase Agreement. The Court rejects Myers' argument. Myers presumably argues both that the "representations and warranties" referenced in question 2a of verdict form no. 1 are not the contract terms, but that the

---

[8] The Court is compelled to note that jury verdict form #2 found in Myers' favor on MDA's claim for intentional or willful fraud. The Court is flummoxed why neither Myers nor MDA mention this jury verdict in their pleadings. Without more background on this claim and the state court case, the Court can only conclude that jury verdict form #2 is not relevant to these pleadings.

6

"representations and warranties" referenced in jury instruction no. 19 are the contract terms. He cannot have it both ways. Myers has provided no reason to distinguish between the use of the language "representations and warranties" in question 2a as opposed to jury instruction no. 19. Accordingly, the Court finds that MDA has established justifiable reliance as to Myers' breach of the Stock Purchase Agreement.

With respect to both intent and reliance, any argument as to claim preclusion on MDA's § 523(a)(2)(A) claim is fundamentally flawed because it fails to recognize a distinction between MDA's state court case, brought under state law to enforce state created rights, and MDA's claim under § 523(a)(2)(A) to determine dischargeability. There exist two separate and distinct causes of action in bankruptcy court: one being the cause of action on the debt and the other being the cause of action to determine the dischargeability of that debt. Spinnenweber v. Moran (In re Moran), 152 B.R. 493, 495 (Bankr. S.D. Ohio 1993) (quoting Brockenbrough v. Taylor (In re Taylor), 54 B.R. 515, 517-18 (Bankr. E.D. Va. 1985)); *accord* Brown v. Felsen, 442 U.S. 127, 132, 135 (1979) ("neither the interests served by res judicata, the process of orderly adjudication in state courts, nor the policies of the Bankruptcy Act would be well served by foreclosing petitioners from submitting additional evidence to prove his case"). The state court case was MDA's cause of action on the debt itself and this adversary proceeding is MDA's cause of action to determine whether that debt is nondischargeable.

Likewise, Myers' argument as to issue preclusion is also flawed. Myers cites the case of Jones v. Reyes (In re Reyes), No. 10-52366-C, 2011 Bankr. LEXIS 2118 (Bankr. W.D. Tex. June 1, 2011) to support his argument that MDA cannot relitigate the characterization of its claims making up the judgment against Myers. In Reyes, the court determined that since the jury found that the defendants did not commit statutory fraud, the plaintiff could not relitigate the issue in bankruptcy court. The Court declines to follow Reyes. First, Reyes is not binding on this Court and only serves as a persuasive guide. Second, the Reyes court failed to cite any case law or other authority for its decision and this Court is unable to find any case law from the Sixth Circuit to support the decision in Reyes. Finally, it is possible to distinguish Reyes, as every meaningful issue that would be relevant had been determined by the jury. It was not possible for the claims to be recharacterized, unlike the current case in which relevant issues were undecided in any binding fashion.

An extreme view of Reyes would hold that a plaintiff must plead and try every potential cause of action in state court or be estopped thereafter. This would require a plaintiff with a simple breach of contract claim and a complex fraud claim to fully prosecute both in the state court, even if the contract claim alone exceeded the defendant's collectibility. This would be counterproductive. Plaintiffs need not assume bankruptcy will be filed and pursue every potential cause of action for fear of a collateral estoppel or *res judicata* bar.

> In short, there is no requirement that the allegations of a complaint filed in state court prior to a debtor filing a petition in bankruptcy correspond to the elements of the grounds contained in § 523(a) of the Bankruptcy Code. Otherwise, plaintiffs in state court would be required to anticipate the bankruptcy of every defendant and

7

litigate every conceivable issue under § 523(a) in the event a defendant should subsequently file bankruptcy. Such needless litigation is not required by the Bankruptcy Code. *See Frank v. Daley (In re Daley)*, 776 F.2d 834 (9th Cir. 1985). When a creditor is attempting to obtain a judgment in state court it may be assumed that it is the success of the litigation and the amount of recovery that are significant to the creditor and not the particular theory of recovery.

Moran, 152 B.R. at 496.

Finally, Myers reads MDA's complaint to plead the facts as to the jury verdicts only. However, the Court reads MDA's complaint to argue that the facts which gave rise to the verdict in the state court case are the same facts that it will use to make its claim for nondischargeability pursuant to § 523(a)(2)(A). Since MDA has a cause of action for both the debt itself and a cause of action for whether that debt is dischargeable, MDA's complaint seeking nondischargeability pursuant to § 523(a)(2)(A) is not barred by *res judicata* and is not barred by collateral estoppel for other reasons set forth herein.

MDA has not asked for summary judgment on any counts of its complaint. In fact, MDA has stated that it has facts to be proven. The Court believes that there is a genuine issue of fact as to MDA's § 523(a)(2)(A) claim and, accordingly, summary judgment is not appropriate. In the interests of justice and having found no substantial prejudice to Myers, the Court will grant MDA leave to replead its claim for nondischargeability pursuant to § 523(a)(2)(A) with particularity as to both the Stock Purchase Agreement and the Executive Employment Agreement.

*IV.    Section 523(a)(4)*

Pursuant to 11 U.S.C. § 523(a)(4), a debtor is not entitled to a discharge for any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." MDA makes a claim under § 523(a)(4) for both fiduciary fraud or defalcation, as well as embezzlement, for the judgment against Myers for the breach of the Executive Employment Agreement in the amount of $1,000,000.00 plus prejudgment interest of $626,400.00.

"A debt is nondischargeable as a defalcation when the preponderance of the evidence establishes: '(1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss.'" Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci), 493 F.3d 635, 639 (6th Cir. 2007) (citation omitted). The Sixth Circuit has construed the term "fiduciary capacity" more narrowly than the term is used in other instances. Id. (citing Commw. Land Title Co. v. Blaszak (In re Blaszak), 397 F.3d 386, 391 (6th Cir. 2005)). Application of the defalcation provision is limited to express or technical trusts, excluding constructive or implied trusts implied by operation of law as a matter of equity. Bucci, 493 F.3d at 639 (citing Carlisle Cashway, Inc. v. Johnson (In re Johnson), 691 F.2d 249, 251-52 (6th Cir. 1982); Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.), 760 F.2d 121, 125 (6th Cir. 1985)). The defalcation provision does not apply to a debtor who fails to meet an obligation under a common law fiduciary relationship. Bucci, 493 F.3d at 639 (citing R.E. Am., Inc. v. Garver (In re

8

Garver), 116 F.3d 176, 179 (6th Cir. 1997)). Rather, the debtor must hold funds in trust for a third party. Garver, 116 F.3d at 179.

To establish that a debt is nondischargeable based on embezzlement, the creditor must establish that: (1) the creditor entrusted the property to the debtor, (2) the debtor misappropriated the property for a non-intended use, and (3) there are indicators of fraud. Brady v. McCallister (In re Brady), 101 F.3d 1165, 1173 (6th Cir. 1996) (citation omitted); *accord* Bucci, 493 F.3d at 644.

As noted above, Defendant argues that summary judgment is appropriate on MDA's § 523(a)(4) claim because collateral estoppel applies and bars it. Specifically, Defendant argues that MDA obtained a verdict of breach of the Executive Employment Agreement in the state court case. In the instant matter, MDA's complaint pleads that the verdict from the state court case establishes a fiduciary relationship, defalcation, and embezzlement, but does not plead any independent conduct. MDA argues that Defendant doesn't mean collateral estoppel and instead must be arguing *res judicata* or claim preclusion, which it knows to be clearly unavailing due to Brown v. Felsen, 442 U.S. 127 (1979). Defendant is assertive in his argument that he is arguing collateral estoppel, not *res judicata*, so the Court will address only the collateral estoppel argument.

The state court case does not include any findings[9] of whether or not Defendant acted as a fiduciary, whether or not an express or technical trust was created, and whether or not Defendant committed embezzlement pursuant to § 523(a)(4). The state court case did not make these findings because MDA proceeded against Defendant for a breach of the Executive Employment Agreement, not for fiduciary fraud, defalcation, or embezzlement. Defendant's argument of collateral estoppel fails in this instance because the issue of whether Defendant committed fiduciary fraud or defalcation did not arise in the state court case.

Like Defendant's argument regarding MDA's § 523(a)(2)(A) claim, his position is fundamentally flawed because it fails to recognize a distinction between MDA's state court case, brought under state law to enforce state created rights, and MDA's claim under § 523(a)(4) to determine dischargeability. *See* Moran, 152 B.R. at 495. The state court case was MDA's cause of action on the debt itself and this adversary proceeding is MDA's cause of action to determine whether the debt is nondischargeable. As discussed above, the Court declines to follow Reyes cited by Myers in support of his argument for collateral estoppel.

Defendant's argument that MDA's complaint pleads only the jury verdict form is compelling, but ultimately fails. The Court believes that MDA is not arguing that the verdict itself proves MDA's § 523(a)(4) claim. Rather, the Court reads MDA's complaint to argue that the facts which gave rise to the verdict in the state court case are the same facts that it will use to make its claim for nondischargeability pursuant to § 523(a)(4).

As discussed above, MDA has not asked for summary judgment on any counts of its complaint and believes it has facts to be proven. It appears that there is a genuine issue of fact as

---

[9] The Court refers to the jury verdicts, the jury instructions, and the Franklin County court's judgment entry.

9

to MDA's § 523(a)(4) claim. Accordingly, summary judgment is not appropriate. In the interests of justice and having found no substantial prejudice to Myers, the Court will grant MDA leave to replead its claim for nondischargeability pursuant to § 523(a)(4) with particularity.

V.     *Section 523(a)(6)*

Under 11 U.S.C. § 523(a)(6), a debt is excluded from discharge if the debt is "for willful and malicious injury by the debtor to another entity or to the property of another entity." A creditor "must prove by a preponderance of the evidence that the injury from which the debt arises was both willful and malicious." Transp. Equip. Sales Corp. v. Hahn (In re Hahn), Case No. 09-37597, Adv. No. 10-3041, 2011 Bankr. LEXIS 2979, at 17 (Bankr. N.D. Ohio July 29, 2011) (citing Markowitz, 190 F.3d at 463) (other citations omitted).

A willful injury is one "where the debtor 'desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it.'" Ewers v. Cottingham (In re Cottingham), 473 B.R. 703, 709 (B.A.P. 6th Cir. 2012) (quoting Markowitz, 190 F.3d at 464) (other citations omitted). The injury itself must be deliberate or intentional, not just a deliberate or intentional act that leads to injury. Musilli v. Droomers (In re Musilli), 379 Fed. Appx. 494, 498 (6th Cir. 2010) (unreported) (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)). The Sixth Circuit has developed a non-exclusive list of "types of misconduct [that] satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises." Steier v. Best (In re Best), 109 F. App'x 1, 5 & n.2 (6th Cir. 2004); *accord* Musilli, 379 Fed. Appx. at 498.

In addition to proving a "willful" injury, the creditor must also prove that the debtor acted maliciously. "Malicious injury means an injury caused in 'conscious disregard of one's duties or without just cause or excuse.'" Cottingham, 473 B.R. at 709 (quoting Wheeler v. Laudani, 783 F.20 610, 615 (6th Cir. 1986)); *accord* Hahn, 2011 Bankr. LEXIS 2979 at 19. "[U]nless 'the actor desires to cause consequences of his act, or … believes that the consequences are substantially certain to result from it,' . . . he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." Hahn, 2011 Bankr. LEXIS at 18 (quoting Markowitz, 190 F.3d at 464).

MDA seeks a determination of nondischargeability for the judgment in the total amount of $5,245,106.00 plus prejudgment interest of $3,453,640.60 against Myers for his breaches of the Stock Purchase Agreement and the Executive Employment Agreement. Myers seeks summary judgment in his favor arguing that issue preclusion bars MDA from relitigating the same issues in this action. While MDA assets that Myers must mean *res judicata*, not issue preclusion, Myers continues to assert issue preclusion.

Much of Myers' argument is identical or nearly identical to that made with respect to MDA's § 523(a)(2)(A) claim as it relates to the Stock Purchase Agreement, discussed above, and the Court will not repeat it here. With respect to Myers' argument regarding intent and reliance

10

for the breach of the Stock Purchase Agreement claim, the Court has already discussed and made findings on those issues above. The jury's verdict on the issue of intent as it relates to the Stock Purchase is not dispositive. Despite the differing standards for intent between a § 523(a)(2)(A) claim and a § 523(a)(6) claim, the Court, as discussed above, finds that the question of intent posed to the jury served only to determine whether or not the damages cap applied. The jury's verdict on the issue of reliance is dispositive as the jury could not have found Myers breached the Stock Purchase Agreement without a finding of reliance.

Turning now to the arguments regarding the Executive Employment Agreement, Myers argues that verdict form no. 4 does not make the findings that MDA alleges. Again, it appears that Myers reads MDA's complaint to refer only to the jury verdict form for its § 523(a)(6) claim for breach of the Executive Employment Agreement. The Court does not agree. The Court reads MDA's complaint to argue that the facts which gave rise to the verdict in the state court case are the same facts that it will use to make its claim for nondischargeability pursuant to § 523(a)(6). Myers fails to recognize a distinction between MDA's state court case, brought under state law to enforce state created rights, and MDA's claim under § 523(a)(6) to determine dischargeability. *See* Moran, 152 B.R. at 495. The state court case was MDA's cause of action on the debt itself and this adversary proceeding is MDA's cause of action to determine whether that debt is nondischargeable. As discussed above, the Court declines to follow Reyes cited by Myers in support of his argument for collateral estoppel.

Myers also argues that MDA attempts to use the verdicts in favor of Martin Designs in the state court case to make its § 523(a)(6) claim in this matter. MDA counters this argument by stating that the same conduct by Myers applies to both its claims and Martin Designs' claims in the state court case and it is, therefore, appropriate to discuss the conduct giving rise to its claim. The Court does not read MDA's complaint as an attempt to use the debt of Martin Designs and the findings related thereto to meet its burden of proof for the elements of its § 523(a)(6) claim. The Court reads the complaint as setting forth facts which are so intertwined that it is impossible to describe only MDA's claims without reference to those of Martin Designs. Should MDA later present evidence that solely relates to Martin Designs' claims and debt, Myers is free to bring an appropriate motion at that time.

Again, MDA did not request summary judgment on any counts of its complaint and believes it has facts to be proven. There are genuine issues of fact as to whether Myers caused a willful and malicious injury to MDA as a result of his breaches of the Stock Purchase Agreement and Executive Employment Agreement. Accordingly, summary judgment is not appropriate.

*VI.    Motion to Strike*

The Court, having decided Myers' motion for summary judgment without reference to the documents, and arguments raised by MDA arising from those documents, that Myers seeks to have stricken, deems Myers' motion to strike moot and will deny it accordingly.

An appropriate order will be entered simultaneously with this memorandum of opinion.

# # #

**Service List:**

G. Christopher Meyer
Squire Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304

Richard K Stovall
Allen Kuehnle Stovall & Neuman LLP
17 South High Street, Suite 1220
Columbus, OH 43215